# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| THE COSAC FOUNDATION, INC., | ) | |
| doing business as The Homeless Voice, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No: 3:24-cv-00213** |
| vs. | ) | |
| | ) | |
| CITY OF JACKSONVILLE, | ) | |
| FLORIDA, a Florida municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

_____

### Plaintiff's Motion for Preliminary Injunction

Plaintiff, the Cosac Foundation, Inc. (Foundation), requests that the Court preliminary enjoin the City of Jacksonville, Florida (City), from enforcing various requirements of the City's Municipal Code of Ordinances (Code), as described below.

A City Ordinance bans "solicitation" on all City roads and sidewalks, and also bans standing on medians and physically exchanging any item with motorists along large swaths of City roads, effectively prohibiting requesting donations or distributing literature throughout the City. Although these activities may be performed with a permit, the permit scheme is largely illusory—it only allows solicitation for six days per year, and applicants must jump through insurmountable hoops (including purchasing a million-dollar insurance policy) to get one.  Applicants who get that far are then faced with a vague approval standard

that affords the City with limitless discretion to deny the permit.  The Ordinance prohibits and burdens core First Amendment activities, and is therefore unconstitutional, both on its face and as applied to Plaintiffs, and should be enjoined.

## MATERIAL FACTS

The Foundation operates a solicitor program through which it distributes its free newspaper, THE HOMELESS VOICE, and collects donations primarily from vehicle occupants ("motorists") stopped at traffic lights. Verified Compl. (ECF 1) at ¶¶ 8, 13-15. Its solicitors stand and display the newspaper on medians and enter the road to distribute it and solicit and collect donations from motorists. *Id.* at ¶ 16.

The City's Ordinance No. 2022-574-E (the "Ordinance") bans these First Amendment activities. *Id.* at ¶ 27. Its *Solicitation Ban* prohibits solicitation in the right-of-way, Code § 804.807(h), which applies on every street and sidewalk in the City. *Id.* at ¶¶ 28-29. Its *Physical-Exchange Ban* prohibits distributing the newspaper and collecting donations in many roadways, Code § 804.1701(b)(2). *Id.* at ¶ 31. Its *Median Ban* prohibits remaining on the median adjacent to those roadways, Code § 804.1701(b)(1). *Id.* at ¶ 30.

The Ordinance creates a permitting scheme that would allow the above activities, but the scheme is largely illusory.  First, a permit would only allow solicitation on six days per calendar year, thereby amounting to a 359-day per year ban.  Code § 804.807(e)-(f).  Second, applicants must submit an application that has a "plan for review and comment by the City Traffic Engineer," indemnification

in favor of the City "in a form satisfactory to the City attorney," and proof of commercial general liability insurance with at least $1,000,000 in coverage. Code § 804.807(a). If applicants manage to get that far, the standard used to approve permits vests limitless discretion with the City: permits are approved if the City determines "that the use will not interfere with the safe and efficient movement of traffic and the use will cause no danger to the public." Code § 804.807(a)(7). Finally, if applicants are actually able to obtain a permit, they cannot solicit unless they comply with the Traffic Engineer's safety standards, including wearing a bright vest and displaying a two by two foot sign 350 feet in advance of the solicitation area. Compl. ¶ 52.

Jacksonville Sheriff's deputies have informed Foundation solicitors that they may not solicit along Jacksonville streets, and have threatened them with citation and arrest. *Id*. at ¶¶ 50-65. As a result, the Foundation has ceased its solicitor program because its solicitors reasonably fear arrest, prosecution, being trespassed, and being issued a civil penalty, and the Foundation does not want to expose its solicitors to these consequences. *Id*. at ¶¶ 66-68.

The Ordinance has effectively banned requesting donations and distributing literature throughout vast portions of City sidewalks and streets, and has prohibited the Foundation from engaging in core First Amendment activities: soliciting donations and distributing its newspaper. The Ordinance is unconstitutional and should be immediately enjoined.

## ARGUMENT

Courts grant a preliminary injunction where plaintiffs are: (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) where "the balance of equities tips in [plaintiff's] favor," and (4) where the provision of interim relief "is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Notably, the third and fourth "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). All four factors weigh in the Foundation's favor.

### PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS FIRST AMENDMENT CLAIMS

### 1. The City's bans regulate First Amendment activities.

"In determining whether the government has violated free speech rights, the initial inquiry is whether the speech or conduct affected by the government action comes within the ambit of the First Amendment." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1336 (11th Cir. 2021). The activities regulated the Ordinance undoubtedly qualify.

First, "solicitation of charitable contributions is protected speech" under the First Amendment. *Riley v. National Federation of the Blind*, 487 U.S. 781, 789 (1988). *See also Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection.").

Second, the City's Physical-Exchange Ban restricts First Amendment activities of newspaper-distribution and collection of donations. *Lovell v. City of*

*Griffin*, 303 U.S. 444, 452 (1938) (First Amendment protects distribution and publication of newspapers). Moreover, the physical exchange of money is an integral component and the ultimate purpose of solicitation, which is expressive activity protected by the First Amendment. *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980); *Citizens United v. FEC*, 558 U.S. 310, 336 (2010) ("Laws enacted to control or suppress speech may operate at different points in the speech process."). Where the physical exchange of money is intertwined with solicitation speech, it is entitled to First Amendment protection. *Speet v. Schuette*, 726 F.3d 867, 876 (6th Cir. 2013) ("*Schaumburg* does not suggest that the physical exchange of money may be isolated; it is 'intertwined' with speech that the First Amendment protects."); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021) (holding Amazon could not be forced to donate to an organization because "donating money qualifies as expressive conduct").

Third, the First Amendment applies to the Median Ban because it restricts access to a public forum. *See McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (invalidating a Massachusetts law that forbade standing on a sidewalk within 35 feet of an abortion clinic and noting it was "subject to First Amendment scrutiny"). Thus, "even though [the City's Median Ban] says nothing about speech on its face," if it restricts access to traditional public forum, the First Amendment applies. *Id.* at 476; *see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) ("Because a principal purpose of traditional public fora is the free

exchange of ideas, speakers can be excluded from a public forum only" in limited circumstances.).

Additionally, the Median Ban imposes "a disproportionate burden upon those engaged in protected First Amendment activities." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 704 (1986). Its regulation of "nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity." *Id.* at 706–07. The principal reason for anyone, including the Foundation, to remain on the median is to express ideas. *See McDonald v. City of Pompano Beach, Florida*, 556 F. Supp. 3d 1334, 1349 (S.D. Fla. 2021) ("[W]e think it fair to infer that most people who stand on a median for an extended period of time—especially a narrow median like ours—will be there holding a sign, a leaflet, a bullhorn, or some other mechanism for the expression of a message.). Thus, a ban on median-standing has the inevitable effect of silencing speech.

The Ordinance therefore bans and restricts the Foundation's First Amendment activities.

## 2. The banned activity occurs in a traditional public forum.

The City's Solicitation Ban applies in the right-of-way (roads and sidewalks), and its Physical-Exchange Ban applies in designated roadways, which are "held in the public trust" and considered the "archetype of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480-81 (1988). They historically "have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir.

2011) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983)).

Medians are sandwiched by uncontested public forums—streets and sidewalks. "If the road that abuts a median on both sides is a public forum, the median itself also qualifies." *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1068 (10th Cir. 2020) (holding "medians are traditional public fora"). And the existence or proximity to vehicular traffic does not "deprive public streets of their status as public fora." *Id.* at 1068–69 (collecting cases).

The government's ability to restrict speech in these traditional public forums is "very limited." *McCullen*, 573 U.S. at 477.

### 3. Intermediate scrutiny applies.

This Court should assess the City's bans of First Amendment activities in a public forum under intermediate scrutiny.[1] This scrutiny requires the City to establish each ban is "[1] narrowly tailored to [2] achieve a significant government interest, and [3] leaves open ample alternative channels of communication." *Keister v. Bell*, 29 F.4th 1239, 1252 (11th Cir. 2022).

---

[1] Plaintiff believes the City's solicitation ban is content-based because other, non-soliciting speech is permitted. *See Messina v. City of Fort Lauderdale, Florida*, 546 F. Supp. 3d 1227, 1248 (S.D. Fla. 2021). Thus, this prohibition "draws distinctions based on the message" and singles out "particular speech" based on the "message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Dicta in *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 72 (2022), suggests otherwise. *But see Scott v. City of Daytona Beach Florida*, 6:22-CV-2192-WWB-RMN, 2023 WL 6324956, at *3 (M.D. Fla. Aug. 29, 2023) (distinguishing *Austin* where the ban only applied to some types of solicitation). It is unnecessary to address this issue because the Ordinance fails under even intermediate scrutiny.

The City's sole justification for the prohibition stated in its preamble—traffic safety—is likely a "significant interest." But, as demonstrated below, the wildly overbroad Ordinance is not narrowly tailored to this goal, nor does it leave open ample alternative channels of communication.

**4. The City's bans are not narrowly tailored.**

Narrow-tailoring means a ban may not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). *See also McCullen*, 572 U.S. at 486 ("[B]y demanding a close fit between the ends and the means, the tailoring requirement prevents the government from too readily sacrificing speech for efficiency."). The City bears the burden of proof and must show narrow tailoring. *See Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). And a similar burden and requirement for proof exist at the preliminary injunction stage. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

### *4.1. The City will be unable to show the bans advance traffic safety.*

The City justifies these bans as necessary traffic-safety measures to reduce incidents of vehicle-pedestrian crashes. Code 2022-574-E at 1-3; *see also* § 804.1701(b). But although the City has documented a number of vehicle-pedestrian crashes, there is no evidence showing that they resulted from persons soliciting near or on the roadway. The City has not published any evidence, study, or legislative finding that shows that solicitation, physical interactions with a

motorist, or a person remaining on a median caused a vehicle-pedestrian crash, resulted in injury from a vehicle, or caused a vehicular crash.  Indeed, this flaw in the data was even pointed out by City Council Member Tyrona Clark-Murra in the Oct. 3, 2022, Neighborhood Committee Meeting,[2] who noted that the information presented to the Council did not identify whether vehicle-pedestrian crashes involved any of the prohibited activities.

Because the City cannot show that the incidents of vehicle-pedestrian crashes occurred because of the First Amendment activity, it cannot carry its burden to show that its bans are narrowly tailored to its proffered government interest.  This is fatal to the ordinance. *See Brewer v. City of Albuquerque,* 18 F.4th 1205 (10th Cir. 2021) (striking down law prohibiting exchanges with vehicles in part because evidence of traffic crashes were not connected to pedestrian/vehicle exchanges); *Messina*, 546 F. Supp. 3d at 1250 (granting preliminary injunction because city failed to put forth any evidence to show that roadway exchanges had been either the subjects of any accidents on any of the prohibited roadways, or that their conduct caused or contributed to a traffic accident)[3]; *McCraw*, 973 F.3d at

---

[2] https://jaxcityc.legistar.com/MeetingDetail.aspx?ID=987764&GUID=8B4B51B9-310F-4275-9C22-99E58651C139

[3] The preliminary injunction in *Messina* was recently made permanent following a trial, wherein the Court permanently enjoined the ordinance chiefly because the City had no evidence showing that crashes were caused by hand-to-hand transmissions. *Messina v. City of Fort Lauderdale*, 21-CV-60168, 2024 WL 301574, at *26 (S.D. Fla. Jan. 26, 2024).

1072 ("Critically, this record is devoid of evidence that accidents involving vehicles and pedestrians [in the prohibited context] is an actual issue, as opposed to a hypothetical concern. There is neither evidence of any accident involving a pedestrian [in the prohibited circumstance]").

The City assumes the ban will help, but assumptions are insufficient. "[M]ere speculation or conjecture" is insufficient; the Defendants must show the bans will alleviate actual harms to a "material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (same). Without this evidence, the Defendants lack a "close fit between ends and means" that narrow tailoring demands. *McCullen*, 573 U.S. at 486.

To justify the bans, the Defendant must show "that it seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen*, 573 U.S. at 494. It must show that it "considered different methods that other jurisdictions have found effective." *Id.* It must explain why enforcing state law about interfering with traffic will not be sufficient.  Because it cannot do so, the Ordinance fails narrow tailoring. *See Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1296 (11th Cir. 2021) ("[A]n abundance of targeted alternatives may indicate that a regulation is broader than necessary.").

### 4.2 The Bans are Geographically Overinclusive

The Ordinance also fails narrow tailoring because it is geographically overinclusive.  The Solicitation Ban applies on every sidewalk and road in the City. The Median and Physical Exchange Bans apply in wide swaths of the City's

roadways—including some with minimal traffic that are indisputably safe—regardless of any evidence showing those locations are more dangerous. *See Messina,* 546 F. Supp. 3d at 1251 (granting preliminary injunction against similar physical exchange ban that applied on heavily trafficked arterial roads); *Reynolds v. Middleton*, 779 F.3d 222, 224-25, 230-32 (4th Cir. 2015) (striking down ordinance barring solicitation on highways or medians because, although the ordinance had a "county-wide sweep," the government's evidence "established, at most, a problem with road solicitation at busy intersections in the west end of the county); *Cutting v. City of Portland, Me.*, 802 F.3d 79, 82 (1st Cir. 2015) (citywide median ban not narrowly tailored where evidence showed accidents "clustered around a few medians" with no evidence as to others); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940-41 (9th Cir. 2011) Such an overbroad ban is "hardly a narrowly tailored solution." *McCullen*, 573 U.S. at 493.

### 4.3  *The Ordinance is fatally underinclusive.*

The Solicitation Ban is also not tailored to traffic safety because it is fatally underinclusive: The risk posed to pedestrians on the road applies equally no matter the speech, yet the City only prohibits solicitation while it allows, for example, holding political signs and having political discussions. *See Reed*, 576 U.S. at 172 ("In light of this under inclusiveness, the Town has not met its burden to prove that its Sign Code is narrowly tailored to further a compelling government interest."). Courts have soundly rejected street solicitation restrictions based on public safety

that single out solicitation for different treatment. *See, e.g., Rodgers v. Bryant*, 942 F.3d 451, 457 (8th Cir. 2019) (since state provided "no justification for its decision to single out charitable solicitation from other types of solicitation, the anti-loitering law is underinclusive and, consequently, not narrowly tailored"). If the prohibition legitimately sought to promote traffic safety, it would apply to all speech that could potentially create the targeted public danger the law seeks to prevent.

### 4.4   *Permitting scheme does not cure unconstitutional restriction on speech*

The City sets aside all of these bans when a person has a permit. Code § 804.807(h); Code § 804.1701(b).  Yet, these permits do not create a viable avenue around the restrictions because their number and duration are severely limited. The City only grants an applicant two permits a year for 72 hours each, from sunrise to sunset. Code § 804.807(a)(6) and (e-f). Thus, the permitting scheme only lifts the restrictions for six days a year. For the other 359 days of the year, unconstitutional prohibitions stand.   Such an overly restrictive scheme is meaningless to the Foundation, which wants to solicit continuously.

### 5.   The City's bans leave insufficient alternative channels of communication.

To survive intermediate scrutiny, the bans must "leaves open ample alternative channels of communication."[4] *Keister v. Bell*, 29 F.4th 1239, 1252 (11th

---

[4] A finding that the Ordinance is not narrowly tailored obviates the need to address this prong.  *See McCullen*, 573 U.S. at 496 n.9; *Reynolds*, 779 F.3d at 232 n.5.

Cir. 2022).  Those channels must be "adequate and meaningful." *LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 952 (11th Cir. 2022).  *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984) ("[A] restriction on expressive activity may be invalid if the remaining modes of communication are inadequate."). For alternative channels to suffice, "[t]he speaker must be able to effectively communicate his message to the intended audience in face of the Ordinance's restrictions." *LaCroix,* 38 F.4th at 952.  Here, the City's bans apply to the vast majority of city roads where the Foundation could effectively distribute newspapers and collect donations. The Solicitation Ban applies to every street and sidewalk, so there is no alternative channel for the Foundation.  For obtaining donations and distributing newspapers, there are no roadways in the City that are not covered by the bans that would be adequate for the Foundation to reach its intended audience. *See Reynolds v. Middleton*, 779 F.3d 222, 224-225 (4th Cir. 2015) (sidewalk not adequate substitute for medians); *McCraw*, 973 F.3d at 1079 (10th Cir. 2020) (same). Indeed, the medians and roads are the natural and proper places to engage in the Foundation's First Amendment activities. "[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. State of New Jersey,* 308 U.S. 147, 163 (1939).

**6. The City's permitting scheme is an unconstitutional prior restraint.**

The City's permitting scheme constitutes a prior restraint and is unconstitutional as well. A prior restraint describes "administrative and judicial

orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quotation omitted; italics in original). An ordinance that makes exercise of First Amendment activities in a public forum contingent on approval from the government is a prior restraint. *Ward*, 491 U.S. at 795 n.5; *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969) ("A prior restraint of expression exists when the government can deny access to a forum before the expression occurs.");[5] *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017); *Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1250–51 (11th Cir. 2004); *United States v. Frandsen,* 212 F.3d 1231, 1236–37 (11th Cir. 2000). "Permitting ordinances and licensing ordinances are classic examples of prior restraints." *Barrett*, 872 F.3d at 1223 (citations omitted).

A prior restraint is presumptively unconstitutional. *Barrett*, 872 F.3d at 1223. "[A] law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition." *Watchtower*, 536 U.S. at 166. "It is offensive ... that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so." *Id.* at 165-66.

---

[5] The Median Ban is most clearly a prior restraint because the City restricts access to a public forum. *See United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir. 2000) (National Park Service's ban of all First Amendment activities in a specific location without a permit was unconstitutional).

The City's permitting scheme is unconstitutional for three reasons. (1) It grants unbridled discretion to the Public Works Department and the City attorney to deny the permit, (2) it is not narrowly tailored to a stated interest, and (3) it requires the Foundation to obtain liability insurance an excessive, or not nominal, cost.

### 6.1  *The permitting scheme grants unbridled discretion.*

"[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth,* 394 U.S. at 150–51. "Even a facially content-neutral time, place, and manner regulation may not vest public officials with unbridled discretion over permitting decisions." *Burk*, 365 F.3d at 1256.

Yet, the City's permitting scheme does just that. Code § 804.807(a)(7) grants the Public Works Department the authority to deny a permit when "the use will [] interfere with the safe and efficient movement of traffic [or] the use will cause [] danger to the public." Furthermore, it requires the applicant to provide an indemnification of the City "in a form satisfactory to the City attorney." *Id.*, (a)(4). Both vest excessive discretion in these officials. *Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1362 (1999) ("virtually any amount of discretion beyond the merely ministerial is suspect").

The City provides *some* guidance about when to deny a permit, like the ordinance in *Shuttlesworth,* 394 U.S. at 149-50 (a permit may be denied to ensure

"public welfare, peace, safety, health, decency, good order, morals or convenience"). Yet, this limited guidance falls short of the required guidance. *Id.* at 151 (It "conferred ... virtually unbridled and absolute power" to deny the permit); *Lady J.*, 176 F.3d at 1362 (finding "run-of-the-mill zoning considerations" were not "precise and objective" and "individually and collectively—empower[ed] the zoning board to covertly discriminate"). The City does not explain how the Public Works should determine whether a proposed use will cause interference or a danger. Facially, *any* amount of risk of traffic interference or danger to the public would result in a denial of the application. The City provides no further guidance about how much risk it should tolerate. The City does not provide narrow, objective, or definite standards for how to determine whether a permitted use will interfere with traffic or place the public at risk.  This amounts to limitless discretion to approve or deny the application on its whim.

Likewise, the City does not specify what form the City attorney should consider "satisfactory." The Eleventh Circuit found this exact same provision in a licensing scheme unconstitutional.  *Burk*, 365 F.3d at 1255-56 (holding as unconstitutional a requirement that the applicant indemnify the city "in a form satisfactory to the attorney").

The insufficient "standards allow[] for arbitrary enforcement and even for discrimination based on viewpoint." *Food Not Bombs*, 11 F.4th at 1295. The City's permitting scheme is unconstitutional.

### 6.2  Permitting does not advance a government interest.

Separately, a regulation requiring a permit to speak violates the First Amendment when it otherwise prohibits a broad amount of speech without being narrowly tailored to a stated interest. *Watchtower*, 536 U.S. at 164. The permitting scheme easily fails this test because—even if a permit is granted—it only permits First Amendment activities on six days per year—amounting to a 359-day per year ban.  Whatever the City's interest, this overly restrictive provision bans far more speech than necessary to achieve it.

Even when a permit is given as a matter of course and freely, a permit requirement is not narrowly tailored if it does not advance the City's interest. For instance, in *Watchtower,* the Supreme Court found the permitting requirement violated the First Amendment because, in part, the interest in guarding against annoyances was not advanced by a permit. "The annoyance caused by an uninvited knock on the front door is the same whether or not the visitor is armed with a permit." *Id.* at 168-69.

Finally, the sign and vest requirements imposed by the City Traffic Engineer are not narrowly tailored to their goal. They are onerous and intrusive provisions that serve no purpose other than to deter solicitation. It is inconceivable that a homeless or destitute individual will be able to secure the proper vest and purchase the require two-foot sign with the government-approved message and position it 350 feet in advance of the solicitation area, all to stand on a median a request donations from motorists.  These requirements are unconstitutional.

The City cannot explain how its permitting scheme is narrowly tailored to its interests.

### 6.3  Insurance requirements are unconstitutional.

Lastly, the City requires a permit applicant to "provide proof of commercial general liability insurance against claims for bodily injury and property damage occurring on city roadways . . . having limits of not less than $1,000,000 per occurrence[.]" Code § 804.807(e)(7). It also requires an applicant to indemnify the City. This constitutes an excessive charge for speaking in a public forum, and thus violates the First Amendment. *See Central Florida Nuclear Freeze Campaign v. Walsh,* 774 F.2d 1515, 1523 (11th Cir.1985). In *Walsh,* the Eleventh Circuit held that a city may only demand "nominal charges" for the use of city streets and parks for First Amendment activities. *Id.* Because the fee was more than nominal, it held the ordinance unconstitutional. *Id. Pritchard v. Mackie*, 811 F. Supp. 665, 667–68 (S.D. Fla. 1993), extended *Walsh* to the context of insurance requirements and found "cost of the $1,000,000 liability insurance coverage exceeds a nominal amount." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1282–83 (11th Cir. 2006), did not retreat from *Walsh*. It noted that insurance requirement was narrowly tailored because it was only required for "festivals with an estimated attendance of 10,000 people." Further, "no evidence" indicated the amount was "excessive." *Id.* at 1283.

Because the Foundation is not a natural person, it cannot be determined indigent and excused from the insurance requirement. The form used to determine

indigency only applies to natural persons. Moreover, there is no basis to require the Foundation to risk financial ruin by indemnifying the City to speak in a traditional public forum.

Here, the City's insurance and indemnification requirements are excessive and not nominal. They are unconstitutional.

### THE FOUNDATION SUFFERS IRREPARABLE INJURY.

"[I]t is well settled that the 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury.'" *KH Outdoor, LLC v. City of Titusville*, 458, F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The penalization of Plaintiff's First Amendment rights cannot be "cured by the award of monetary damages." *KH Outdoor,* 458 F.3d at 1272. *See also Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010).

### EQUITIES AND PUBLIC INTEREST SUPPORT INJUNCTION

"Even a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010). "The public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Id*. Because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest. *Id*. at 1290, 1297.

### CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court grant its Motion for Preliminary Injunction, and order as follows:

A.      A declaration that the following provisions of the Jacksonville City Code violate the First Amendment to the U.S. Constitution facially and as applied to Plaintiff:

(1)      Code § 804.807(h) (Solicitation Ban)

(2)      Code § 804.1701 (b)(1) (Median Ban)

(3)      Code § 804.1701 (b)(2)(Physical-Exchange Ban)

(4)      Code § 804.1701 (b)(3) (Commercial-Activity Ban)

(5)      The sign and vest requirements published by the City Traffic Engineer.

B.      An injunction prohibiting the City from enforcing these provisions.

C.      A declaration that the City's permitting scheme in Code § 804.807 is unconstitutional in violation of the First Amendment, both facially and as applied to Plaintiff.

D.      Should any of the bans in the Code provisions listed above remain in effect, an injunction modifying the permitting scheme to allow Plaintiff to obtain a permit upon request that allows Plaintiff to engage in its desired activities without restrictions.

**Ray Taseff**
Florida Bar No. 352500
rtaseff@floridajusticeinstitute.org
**Dante P. Trevisani**
Florida Bar No. 72912
dtrevisani@floridajusticeinstitute.org
**Andrew Udelsman**
Florida Bar 105169
audelsman@floridajusticeinstitute.org
Florida Justice Institute, Inc.
P.O. Box 370747
Miami, FL 33137
T. 305-358-2081
F. 305-358-0910

s/Benjamin James Stevenson
**Benjamin James Stevenson**
Fla. Bar. No. 598909
Stevenson Legal, PLLC
919 Panferio Drive
Pensacola Beach, FL 32561
T. 702.306.6708
bjs@stevenson-legal.com

*Counsel for the Foundation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed today, February 26, 2024, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case.  I also served a copy of this motion, together with the Verified Complaint, on Defendant, as follows:

> Michael T. Fackler, General Counsel
> City of Jacksonville
> mfackler@coj.net

> By:   *s/Ray Taseff*
> Ray Taseff